IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCELINO SANDOVAL,

        Plaintiff,

v.                                                                           CV 11-938 JB/WPL

D.O.C., et al.,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Marcelino Sandoval is a Muslim inmate who was housed at the Guadalupe County Correctional Facility ("GCCF") in Santa Rosa, New Mexico, from May 19, 2011, through September 2014. During that period, Sandoval brought claims against Defendants Chaplain K. Opatz and S. Gallegos ("Defendants") pursuant to 42 U.S.C. § 1983. (Doc. 1.) Sandoval alleges that Opatz and Gallegos violated his First and Fourteenth Amendment rights to freedom of religion by interfering with his practice of Islam and denying him a Halal/Kosher meal without cause. Sandoval also claims that Gallegos violated his Fourteenth Amendment rights under the Equal Protection Clause by treating Sandoval, a Muslim, differently than practitioners of other religious minorities. (*Id.* at 4-5; Doc. 38.) At all relevant times, Opatz was the Chaplain at GCCF and Gallegos was the food services manager at GCCF. Sandoval seeks declaratory relief, punitive and compensatory damages, and a permanent injunction against Opatz and Gallegos.

This matter is before me on the Defendants' *Martinez* report and motion for summary judgment (Doc. 37), Sandoval's response and cross-motion for summary judgment (Doc. 38), and the Defendants' reply (Doc. 39). Having considered the filings and the relevant law, and

being otherwise fully advised on these matters, I recommend that the Court deny both motions for summary judgment.

## BACKGROUND

Sandoval is a devout Muslim. Sandoval submitted the proper paperwork to request a religious diet that met Islamic dietary restrictions when he arrived at GCCF in 2011. He was on a Kosher diet at GCCF until May 19, 2011.[1] After being removed from the Kosher diet, Sandoval exhausted all available administrative remedies with regard to his claims. The New Mexico Corrections Department ("NMCD") denied Sandoval's request to be put back on a Halal diet on August 29, 2011. NMCD reviewed that decision on August 29, 2014, and granted Sandoval's request. Shortly thereafter, Sandoval submitted a second request to be put on a Halal diet, which was approved. Sandoval began receiving a Halal diet at GCCF in September of 2014, and continues to receive the Halal diet after being transferred to the Penitentiary of New Mexico.

The parties agree that Opatz participated in state-wide discussions with other religious officials to make recommendations to NMCD about the religious diets. Sandoval claims that Opatz's participation in these discussions renders him individually responsible for the denial of a Kosher or Halal meal at GCCF. (Doc. 38 at 5.) Furthermore, Sandoval alleges that Gallegos told him that "Kosher meals are not for Muslim inmates, only Jewish inmate[s]. [Gallegos] offer[ed] to place [Sandoval] back on the Kosher meal if [he changed his] religion" to Judaism. (Doc. 1 at 2.) The Defendants contend that GCCF's regularly provided meal was pork and pork-product free, that Kosher meals were discontinued at GCCF pursuant to NMCD policy, and that Sandoval was offered a vegetarian option. (Doc. 37 at 2.)

---

[1] Sandoval apparently received a Halal or Kosher diet prior to arriving at GCCF, and received a Kosher diet, which met the requirements of a Halal diet, at GCCF until May 19, 2011.

## LEGAL STANDARDS

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The record and all of its reasonable inferences must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). In providing factual support for a summary judgment motion, a party must cite to "particular parts of materials in the record." FED. R. CIV. P. 56(c)(1). A complaint may be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

While the moving party bears the burden of showing that there are no genuine disputes of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party makes this showing by presenting "facts such that a reasonable jury could find in [its] favor." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

A bona fide factual dispute exists even when a pro se plaintiff's factual allegations that are in conflict with the defendants' affidavits are less specific or well-documented than the contentions of the defendants. *See Hall*, 935 F.2d at 1109. Conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual

dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quotation and citation omitted).

Lastly, because Sandoval is a pro se litigant, I must construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## DISCUSSION

The Defendants argue that they are entitled to summary judgment for four reasons: 1) Sandoval has been receiving a Halal meal since September 2014 and is therefore receiving the relief he requested; 2) Defendants cannot be liable for any violation of Sandoval's constitutional rights because GCCF complied with NMCD's policy on inmates' religious dietary restrictions; 3) Sandoval's right to free exercise of his religion was not substantially burdened by GCCF's religious diet policy; and 4) GCCF's religious diet policy was not enacted or applied with a discriminatory purpose or manner. Sandoval responds that he was never offered a vegetarian or other compliant meal, that the Defendants acted on their own opinions, that the lack of a religiously acceptable diet was not a mere inconvenience to his sincerely held beliefs, and that the fact that he is now on a Halal diet does not undo the damage.

The Defendants argue in reply that Sandoval's response did not comply with D.N.M.LR-Civ. 56.1(b) because he did not cite specific numbered facts listed by the Defendants with which he disagrees, and they argue that I should therefore construe Defendants' facts as undisputed. As to this argument—that I should construe Defendants' facts as undisputed because Sandoval did not comply with Local Rule 56.1(b)—I note that this District has a policy of resolving claims on their merits, rather than on pure procedure. *See B.T. ex rel. G.T. v. Santa Fe Pub. Sch.*, No. CIV 05-1165 JB/RLP, 2007 WL 1306814, at *2 (D.N.M. 2007) (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)). To the extent that Sandoval clearly disputed facts, I decline the Defendants' invitation to view the Defendants' facts as undisputed.

**I.    Standing**

I construe the Defendants' first argument, that Sandoval has already received the relief he sought, as challenging Sandoval's continued standing to prosecute this case. Standing to proceed in federal court requires three things: 1) injury in fact, that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; 2) that is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and 3) that can likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (quotations and citations omitted) (alterations in original).

The Defendants appear to cursorily argue that because Sandoval now receives a Halal diet from NMCD that the Court can no longer redress his alleged injury. The Defendants seem to challenge only the third aspect of Sandoval's standing. While Sandoval sought injunctive relief with regard to the diet, he also sought a declaratory judgment and compensatory and punitive damages. (Doc. 1 at 5.) Sandoval's alleged injury remains redressable by a favorable decision of

the Court. Therefore, I reject this argument and recommend that the Court conclude that Sandoval continues to have standing.

## II. Section 1983 Requirements

The Defendants' second argument—that they cannot be liable for any constitutional violations because they were complying with GCCF and NMCD policy—is an argument as to the legal elements of a § 1983 claim. There are, essentially, two facets to succeeding on a claim under 42 U.S.C. § 1983 against a relevant individual. First, the plaintiff must establish the elements of the cause of action, and second, the plaintiff must allege and eventually prove some personal involvement in the violation by the defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Section 1983 imposes liability upon "[e]very person who, under color of [law], subjects[] or causes to be subjected, any . . . person within the jurisdiction . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Prisoners retain constitutional rights while incarcerated. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir. 2002). Inmates "have a constitutional right to a diet conforming to their religious beliefs." *Beerheide*, 286 F.3d at 1185. The elements of a § 1983 claim, then, are 1) a person acting 2) under color of law, who 3) deprives another person of 4) a constitutional right.

The Defendants do not dispute that they are appropriate defendants under § 1983, that Sandoval is a covered person, and that the Defendants were acting under color of law. The right to a religious diet is clearly defined in the Tenth Circuit. *See id.* The remaining issues are whether Sandoval was deprived of a constitutional right and whether the Defendants were the ones who deprived him of that right.

6

The Defendants correctly point out that a plaintiff must allege some personal involvement by the defendant in the complained of constitutional violation in order to succeed on a complaint under § 1983. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). "[A] plaintiff must plead that each . . . defendant, through the . . . individual['s own] actions, has violated the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. at 676).

Sandoval alleges individual actions by both defendants. (*See* Docs. 1, 38.) The Defendants argue that neither Opatz nor Gallegos were policymakers or the ultimate decision-maker regarding religious diet policies, and therefore that neither can be liable for any constitutional violations. The Defendants fail to connect this assertion—that the individual action requirement equates to policymaking authority—to any binding or precedential authority. As the burden on a motion for summary judgment remains with the movants to show that they are entitled to judgment as a matter of law, and the Defendants have failed to make this showing, I recommend that the Court reject this argument. *See* FED. R. CIV. P. 56(a).

Opatz and Gallegos go on to argue that they were simply following GCCF and NMCD policy and should not be held vicariously liable for a policy that they did not create. The Defendants cite to *Monell v. Dep't of Social Services of New York*, 436 U.S. 658 (1978), and *Iqbal* for the proposition that vicarious liability does not apply in § 1983 cases. While it is true that vicarious liability does not apply in § 1983 cases, *Iqbal*, 556 U.S. at 676, the cited cases do not support the Defendants' interpretation.

In *Monell*, the Court concluded that a local government could not be sued under § 1983 based solely on an injury inflicted by an employee or agent, but a local government could be sued under this section when the injury resulted from the employee or agent carrying out the

government's policy or custom. 436 U.S. at 694. In *Iqbal*, the Court addressed the issue of vicarious liability and concluded that a supervisor could be held liable under § 1983 only when the constitutional violation arose from the supervisory responsibilities and the plaintiff eventually proved that the supervisor, as well as the subordinate, violated the Constitution by conduct or purpose. 556 U.S. at 675-77.

The Defendants directed me to no authority suggesting that individuals may not be held liable under § 1983 because they were carrying out a policy or because the governmental entity may also be liable. Therefore, I recommend that the Court reject this argument.

The Defendants make much of the fact that GCCF and NMCD had policies relating to religious diets. However, Sandoval is not challenging the validity of the policy, but rather asserts that his constitutional rights were violated by the denial of a Halal or Kosher meal and Gallegos's alleged statement that Sandoval could always convert to Judaism to receive the Kosher meal. The Defendants' arguments that they cannot be held liable for any violation because they were merely enforcing policy hold no water. Were that argument to succeed, the Court would shield from liability the behavior of individual officers and officials who violated the constitutional rights of others. This cannot be the case. Therefore, the Defendants' argument that the policy was not enacted with discriminatory purpose is irrelevant.

### III.    Free Exercise of Religion

The Defendants argue that GCCF offered Muslim-friendly meals, and therefore, Sandoval's rights were not substantially burdened. The Defendants cite to *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003), for the proposition that a prison's decision to provide a vegetarian meal instead of a meal with Halal or Kosher meat is rationally related to a legitimate

penological interest, and is valid under *Turner v. Safley*, 482 U.S. 78 (1987).[2] *Williams* is inapposite to the case at bar because Sandoval does not challenge the NMCD policy or enacting regulations.

Sandoval did not sign his response under penalty of perjury, but he did assert that neither Opatz nor Gallegos ever alerted him to the existence of a vegetarian option. (Doc. 38 at 5.) Sandoval could present that information in a form that would be admissible in evidence. *See* FED. R. CIV. P. 56(c)(2). Whether Sandoval was presented with the option of a vegetarian meal is a material fact to this case, as it goes to whether his right to a religious diet was actually impinged. There remains a genuine dispute of material fact as to Sandoval's claim against Opatz and Gallegos for interfering with his free exercise of religion. I recommend that the Court deny summary judgment as to this claim.

## IV.     Religious Discrimination

Sandoval alleges that Gallegos told him that he could be placed back on GCCF's Kosher diet if he converted to Judaism. Based on this statement, Sandoval asserts a claim against Gallegos for religious discrimination under the Equal Protection Clause of the Fourteenth Amendment. To sustain this claim, the plaintiff must show that he was "treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). While the Defendants are correct that Sandoval's only proffered evidence is his own recollection and the statements in the grievance file, Sandoval

---

[2] *Turner* established the four-part test for determining whether a prison regulation rises to the level of a constitutional violation. 482 U.S. at 89-91. Those factors are: 1) whether a valid and rational connection exists between the regulation and a legitimate governmental interest advanced in support of the regulation; 2) whether alternative means exist for the prisoner to exercise the right; 3) what impact an accommodation of the right would have on guards, inmates, and prison resources; and 4) whether an alternative is available which would accommodate the right at a de minimis cost to valid penological interests. *Id.*

could testify to this event at trial as the statement of a party opponent. *See* FED. R. EVID. 801(d)(2)(A). There remains a genuine dispute of fact as to whether Gallegos actually made this statement, or one like it, and therefore discriminated against Sandoval on the basis of religion. Because there remains a genuine dispute of material fact, I recommend that the Court deny summary judgment as to Sandoval's claim against Gallegos for religious discrimination.

## CONCLUSION

For the reasons described above, I recommend that the Court deny the Defendants' motion for summary judgment (Doc. 37) and Sandoval's cross motion for summary judgment (Doc. 38) as there remain genuine disputes of material fact. I further recommend that the Court conclude that Sandoval continues to have standing to prosecute this case.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.